**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RADIAN GUARANTY INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 13-6197 |
| v. | : | |
| | : | |
| RHIANNON BOLEN, et al., | : | |
| Defendants. | : | |

**May 2, 2014**                                                                                   **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Plaintiff Radian Guaranty Inc. ("Radian") brings suit against Defendants Rhiannon Bolen ("Bolen"), Arch Capital Group Ltd. ("Arch Group"), Arch Capital Group US Inc. ("Arch Group US"), Arch U.S. MI Services Inc. ("Arch MI Services") and Arch U.S. MI Holdings Inc. ("Arch MI Holdings") (collectively, the "Arch Defendants," and, collectively with Bolen, "Defendants"). Radian alleges that Bolen, its former employee, violated a non-competition agreement with Radian and misappropriated Radian's trade secrets and confidential information when she left Radian to work for the Arch Defendants. Radian also alleges that the Arch Defendants knowingly induced Bolen to join them in violation of her non-competition agreement and with the express intent of benefiting from her knowledge of Radian's trade secrets and confidential information. I exercise subject matter jurisdiction over Radian's claims pursuant to 28 U.S.C. § 1332.

Currently before me is the Arch Defendants' motion to dismiss or transfer the suit. The Arch Defendants move for a dismissal of the suit for failure to join an indispensible party under Federal Rule of Civil Procedure 19. The Arch Defendants also move for dismissal of the claims against them on the ground that this Court lacks personal jurisdiction over the Arch Defendants.

1

In the alternative, pursuant to 28 U.S.C. § 1404(a), the Arch Defendants move for an order transferring the action to the Eastern District of Texas.  Finally, the Arch Defendants request an award of the costs and attorney's fees incurred to prepare and file their motion.  Bolen joins the Arch Defendants' motion seeking dismissal for failure to join an indispensible party and seeking transfer of the action to the Eastern District of Texas.  For the reasons discussed below, I will deny in part and grant in part the Arch Defendants' motion.

## I.    BACKGROUND

### A.  Factual Background[1]

Radian provides private mortgage insurance and related risk management products and services to mortgage lenders across the United States.  Beginning in January 2012, Bolen served as a regional account manager in Radian's Southern Division.  During her eighteen-month tenure in that role, she managed and supported Radian's relationships with key regional mortgage lenders at the corporate level.

On or about September 21, 2012, Bolen entered into a Restricted Stock Unit Grant (the "Stock Grant Agreement") with Radian's parent company, Radian Group Inc. ("Radian Group"). In consideration for a grant of restricted stock, Bolen agreed not to compete against Radian for a one-year period following any separation from Radian.  In the Stock Grant Agreement, Bolen acknowledged that she had been and would be exposed to Radian's trade secrets and confidential information in the course of the performance of her job duties.  She also agreed that she was prohibited from disclosing or using this information for any purpose other than for the benefit of Radian.

The Stock Grant Agreement contains a forum selection clause that states:

---

[1] All facts are taken from the Amended Complaint unless otherwise indicated.

"The Grantee irrevocably and unconditionally (i) agrees that any legal proceeding arising out of this paragraph may be brought in the United States District Court for the Eastern District of Pennsylvania, or if such court does not have jurisdiction or will not accept jurisdiction, in any court of general jurisdiction in Philadelphia County, Pennsylvania, (ii) consents to the non-exclusive jurisdiction of such court in any such proceeding, and (iii) waives any objection to the laying of venue of any such proceeding in any such court."

Restricted Stock Unit Grant, Compl. Ex. B. at 7 (§8(f)).

On August 27, 2013, Bolen informed Radian that she was resigning her position with the company, effective September 10, 2013.  Just prior to announcing her resignation, Bolen emailed some of Radian's confidential customer information to her personal email account.  On or about September 25, 2013, Radian learned that Bolen had been hired as a Regional Vice President by the Arch Defendants.  Global providers of insurance and reinsurance products, the Arch Defendants have recently entered the U.S. mortgage insurance marketplace through several acquisitions.  In particular, in February 2013, the Arch Defendants announced their acquisition of the assets of CMG Mortgage Insurance Co. and PMI, both mortgage insurance companies, as well as their intention to commence U.S. operations in direct competition with Radian within twelve months.  In July 2013, when the Arch Defendants approached and interviewed Bolen, they were aware that Bolen was a Radian employee with intimate knowledge of Radian's trade secrets and confidential information.  The Arch Defendants also knew that employing Bolen would violate the terms of the Stock Grant Agreement and nonetheless pursued Bolen and induced her to engage in actions that breached her non-competition agreement and confidentiality obligations.  Since joining the Arch Defendants, Bolen has approached Radian's customers and attempted to solicit business from those customers for herself and the Arch Defendants.

### B.  Procedural Background

On October 23, 2013, Radian and Radian Group filed suit against the Arch Defendants and Bolen.  On November 6, 2013, after being advised that the suit was not subject to federal diversity jurisdiction because Radian Group and three of the Arch Defendants were citizens of Delaware, Radian filed an Amended Complaint that eliminated Radian Group as a plaintiff in order to establish complete diversity.

On November 13, 2013, the Arch Defendants filed their motion to dismiss or transfer the suit to the Eastern District of Texas.  On January 23, 2014, I granted Radian's motion for expedited limited jurisdictional discovery on the personal jurisdiction issue.  On February 25, 2014, I granted the Arch Defendants' motion for expedited discovery in support of their motion to dismiss for failure to join an indispensible party.  The motion to dismiss has now been fully briefed.

## II.    FAILURE TO JOIN AN INDISPENSIBLE PARTY

The Arch Defendants, joined by Bolen, contend that the Amended Complaint should be dismissed under Federal Rule of Civil Procedure 19 because Radian Group is a necessary and indispensable party to this action that cannot be joined without destroying the basis for this Court's subject matter jurisdiction over the suit.

### A.  Legal Standard

A Rule 19 challenge requires a multi-step analysis.  First, the court must determine whether a party is necessary under Rule 19(a).  If the party is necessary and can be joined to the action, the court must order as such.  If the party is necessary but joinder is impeded by jurisdictional or other considerations, then the court must determine whether the party is indispensable under Rule 19(b) or whether the action can proceed in the party's absence.

However, if the party is not necessary under Rule 19(a), then the action can proceed in its absence, and no further analysis is required.  Accordingly, whether the party is necessary is the threshold question.  *Id.*

Rule 19(a) requires the joinder of a party who is subject to service of process and within the court's subject matter jurisdiction when:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
>> (i) as a practical matter impair or impede that person's ability to protect that interest or
>> (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a)(1) & (2).  Because Radian Group is not a necessary party under Rule 19(a), I will not discuss Rule 19(b).

**B.  Discussion**

The Arch Defendants and Bolen present three arguments for why Radian Group is a necessary party.  First, under Rule 19(a)(1), the Arch Defendants and Bolen argue that the parties will be unable to obtain complete relief in Radian Group's absence.  Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought.  *See Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, Known as The Sindia*, 895 F.2d 116, 121 (3d Cir. 1990).  Neither Radian nor the Arch Defendants and Bolen would receive incomplete relief without Radian Group in the suit.  Radian is capable of achieving a complete determination on Bolen's breach of the Stock Grant Agreement or her confidentiality obligations and the Arch Defendants' tortious interference with any contractual relations.  Likewise, the Arch Defendants and Bolen could receive a complete

5

determination absolving them of any liability to Radian.  If the Arch Defendants and Bolen are successful, the possibility that they might have to defend against a subsequent suit by Radian Group does not make Radian Group a necessary party to the action.  *See Field v. Volkswagenwerk AG*, 626 F.2d 293, 302 (3d Cir. 1980) ("[T]he fact that want of estoppel may leave a defendant who has defended successfully against one of the injured parties with the risk that he will be liable to another in a subsequent suit does not make it necessary that all of the punitive plaintiffs [ ] be joined in the same suit . . . .").  Therefore, none of the existing parties to the suit would be deprived of complete relief in Radian Group's absence.

Next, under Rule 19(a)(2)(i), the Arch Defendants and Bolen argue that Radian Group has a clear interest in the subject of this action.  Under this prong of the test, the court evaluates whether disposition of the action without the absent party will "as a practical matter impair or impede" the party's ability to protect its interest in the litigation.  "[I]t must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments."  *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 407 (3d Cir. 1993).  Under Pennsylvania law, a party may be precluded from relitigating an issue if the issues are identical, the parties are in privity, and the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in a prior action.  *Sanders v. Sanders*, 558 A.2d 556, 560 (Pa. Super. Ct. 1989).  Because Radian Group would not have a full and fair opportunity to litigate the issues present in this case if it were not joined, Pennsylvania law would accord no preclusive effect to this Court's judgment.  As such, Radian Group's absence would not, as a practical matter, impair its interest.  Moreover, as the Third Circuit found in *Sinda*, "Subdivision (a)(2)(i) of Rule 19 clearly does not apply to this case because [the absent

party] may always protect its interest . . . by voluntarily appearing and asserting its rights." 895 F.2d at 122. To the contrary, in this case, Radian Group has removed itself voluntarily from the litigation and filed an affidavit implying that Radian can sufficiently represent its interests in this case. *See* Browne Aff. ¶¶ 1-5, ECF No. 33-1 (agreeing to be bound by and agreeing not to challenge the outcome of this case); *see also Kessler v. Pollick*, 851 F. Supp. 687, 691 (E.D. Pa. 1994) ("It is appropriate, in considering a motion under Rule 19, to ask the absent party herself whether she believes that her interests would be jeopardized in the absence of joinder. While that person's response is not dispositive of the issue, it may provide a helpful counterbalance to the moving party's assertions.") Thus, the disposition of this action without Radian Group will not impair its ability to protect its interest in this litigation.

Finally, under Rule 19(a)(2)(ii), the Arch Defendants and Bolen argue that failure to join Radian Group could leave the Arch Defendants and Bolen "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." In support of this argument, the Arch Defendants cite *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701 (3d Cir. 1996). In *Royal Maccabees*, the parties in the federal case were already parties to a state action brought by the absent party. *Id*. at 705. The Third Circuit found that the absent party was necessary because if both the state and federal actions proceeded, the insurance companies involved could be asked to deposit the proceeds for the same insurance policies in two different accounts, thus subjecting them to a risk of inconsistent obligations. *Id*. at 706. The court also found that the existence of a prior state action would subject the existing parties to a risk of "needless multiple litigation." *Id*.

However, the present case can be distinguished from *Royal Maccabees*. First, a decision in this case will not impose any "substantial risk of . . . inconsistent obligations" in the event of future litigation brought by Radian Group. If Radian is successful in this action, Bolen will be

enjoined from working for the Arch Defendants in a role that violates her non-competition agreement and confidentiality obligations.  If the Arch Defendants and Bolen are successful, Bolen will continue in her new position with the Arch Defendants subject to the possibility of a subsequent suit by Radian Group.  Under either outcome, there is no "substantial risk" that the parties will simultaneously face conflicting obligations of the kind at issue in *Royal Maccabees*. The fact that the victorious party may have to face the absent party in another forum at another time is not sufficient to find that an absent party is a necessary party under Rule 19(a)(2)(ii).  *See Sindia*, 895 F.2d at 123; *Boone v. General Motors Acceptance Corp.*, 682 F.2d 552, 554 (5th Cir. 1982) (threat of inconsistent *obligations*, not the possibility of multiple litigation which determines Rule 19 considerations); *Field*, 626 F.2d at 301-02 ("[T]he possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a matter of logic, [does not] trigger the application of Rule 19.").  Second, unlike *Royal Maccabees*, there is no pending state court litigation, thus diminishing the risk of "needless multiple litigation."  Further reducing the risk of duplicative litigation, Radian Group has filed an affidavit agreeing not to challenge any judgment in this case and to waive any and all private causes of action it may have against the Arch Defendants and Bolen based on the claims asserted by Radian.[2]  *See* Browne Aff. ¶¶ 4, 6.  Therefore, there is no "substantial risk" of inconsistent obligations or "needless multiple litigation" in this case.

Thus, because Radian Group is not a necessary party under any of the three prongs of Rule 19(a), the motion to dismiss for failure to join a necessary and indispensible party will be denied.

---

[2] I will not decide the legal effect of the affidavit.

### III.   PERSONAL JURISDICTION

Even if the action can proceed without the joinder of Radian Group, the Arch Defendants argue that the claims against them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because none of the Arch Defendants is subject to personal jurisdiction in Pennsylvania.  The parties do not dispute that this Court has personal jurisdiction over Bolen due to her express consent to jurisdiction in Section 8(f) of the Stock Grant Agreement.

#### A.  Legal Standard

Under Federal Rule of Civil Procedure 4(k), a district court exercises personal jurisdiction over a non-resident defendant according to the law of the state where it sits.  *See* Fed. R. Civ. P. 4(k)(1)(A); *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).  Here, the Pennsylvania long-arm statute provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States."  42 Pa. Cons. Stat. Ann. § 5322(b); *Mellon Bank v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 2002) (finding that Pennsylvania's long-arm statute is coextensive with the constitutional limits of due process).  Accordingly, a court may exercise personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Unless the defendant's contacts with the forum are "continuous and systematic," such that the court has general personal jurisdiction over the defendant, those contacts must be specifically related to the present cause of action.  *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).  "Specific personal jurisdiction exists [only] when the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from

9

alleged injuries that arise out of or related to those activities.' " *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  A party can also consent to personal jurisdiction in a court through a forum selection clause.  *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982).

When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).  When the district court does not hold a hearing, the plaintiff must establish only a prima facie case of personal jurisdiction.  *O'Connor*, 496 F.3d at 316.  The plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor.  *Id.*

### B.  Discussion

Radian advances two bases for personal jurisdiction in this Court over the Arch Defendants.  First, Radian argues that this Court has specific jurisdiction over the Arch Defendants because their conduct satisfies the *Calder* effects test.  Second, Radian argues that while not signatories to the Agreement, the Arch Defendants are bound by the forum selection clause in Bolen's Stock Grant Agreement, which includes express consent to personal jurisdiction in this Court.

### 1.    *Calder* Effects Test

Radian argues that this Court has specific personal jurisdiction over all the Arch Defendants because their conduct meets the *Calder* effects test.  When the plaintiff alleges that the defendant has committed an intentional tort, the court must analyze the defendant's contacts with the forum under the effects test as established by the Supreme Court in *Calder v. Jones,* 465

U.S. 783 (1984).  Under the effects test, specific personal jurisdiction exists over the defendant if the plaintiff can show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.  *Imo Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1989).

The requirement that the plaintiff demonstrate that the defendant "expressly aimed its tortious conduct at the forum" is critical to the effects test.  *Marten v. Godwin*, 499 F.3d 290, 265 (3d Cir. 2007).  "Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement.  The defendant must manifest behavior intentionally targeted at and focused on the forum for *Calder* to be satisfied."  *IMO Indus.*, 155 F.3d at 265 (internal quotations marks omitted).  As further explained by a footnote in *IMO Industries*, the fact that Y knew that its competitor W was owned by Pennsylvania company X and that X would experience the injury caused by a drop in W's value at its headquarters in Pennsylvania would not by itself be enough to meet X's burden to show that Y expressly aimed its conduct at Pennsylvania.  *See id.* at 265 n.8.  "[T]he state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants."  *Marten*, 499 F.3d at 298 (3d Cir. 2007).  Additionally, knowledge of a forum selection clause, standing alone, is not sufficient to confer jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) (holding that choice of law provision is not determinative of whether the court can exercise personal jurisdiction over a foreign defendant).  A defendant cannot be deemed to have targeted its allegedly intentional tortious conduct at Pennsylvania because it knew that the

applicable forum selection clause identified Pennsylvania courts as the venue for the resolution of disputes.

Under this standard, Radian has not met its burden of proof with respect to the third element of the effects test.  Radian argues that the Arch Defendants "aimed their conduct at Pennsylvania by establishing and maintaining an employment relationship with Bolen."  Radian Opp. Br. at 24.  Radian fails to explain how the creation of the Arch Defendants' employment relationship with Bolen intentionally targeted or focused on Pennsylvania.  Radian does not allege that the Arch Defendants met with or recruited Bolen in Pennsylvania.  Radian does not allege that the Arch Defendants hired Bolen to work in or serve customers in Pennsylvania.  Indeed, in both her role with Radian and the Arch Defendants, Bolen worked exclusively from Texas serving customers in the southern United States.  As explained in the case law, the allegations that the Arch Defendants knew that Radian's headquarters were in Pennsylvania and that the forum selection clause identified Pennsylvania courts as the venue for resolving disputes are insufficient to meet the "expressly aimed" standard.  Thus, the Arch Defendants did not expressly aim their alleged tortious activity at Pennsylvania, and I do not have personal jurisdiction over any of the Arch Defendants on this basis.

### 2.    Forum Selection Clause

Radian argues that the Arch Defendants, while not signatories to the Agreement, are bound by the forum selection clause in Bolen's Stock Grant Agreement, which provides express consent to personal jurisdiction in the Eastern District of Pennsylvania.  "It is widely accepted that non-signatory third-parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship." *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir.

1988); *Frietsch v. Refco, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995) (citing *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("Courts in this country . . . enforce forum selection clauses in favor of non-parties 'closely related' to a signatory.")).[3]  "In the Third Circuit, a non-signatory party may enforce a forum selection clause in a contract if the party is a third-party beneficiary of the contract or is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound."  *D'Elia v. Grand Caribbean Co., Ltd.*, No. 09-1707, 2010 WL 1372027, at *3 (D.N.J. Mar. 30, 2010); *First Fin. Mgmt. Grp., Inc. v. Univ. Painters of Balt., Inc.*, No. 11-5821, 2012 WL 1150131, at *3 (E.D. Pa. Apr. 5, 2012) (quoting *Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038, 2011 WL 2973543, at *2 (D.N.J. July 21, 2011) ("Third parties that 'should have foreseen governance by the clause' may also be bound by it.")).

        In arguing that the Arch Defendants should be bound by the forum selection clause in Bolen's Stock Grant Agreement, Radian relies on the decision in *Synthes, Inc. v. Emerge Medical, Inc.*, 887 F. Supp. 2d 598 (E.D. Pa. 2012).  In *Synthes*, three sales representatives entered into confidentiality, non-solicitation, and non-competition agreements containing forum selection clauses with their employer Synthes, a medical device sales company.  *Id.* at 600. While working for Synthes, the sales representatives took steps to create and eventually join a competitor, Emerge Medical, Inc.  *Id.*  Synthes brought suit against the sales representatives, Emerge Medical's chief operating officer (the "COO"), and Emerge Medical itself.  Despite the fact that the COO was not a party to the non-competition agreements, the *Synthes* court found

---

[3] Because the parties have not challenged the applicability of federal law to this issue, I will assume without deciding that federal law applies.  *See Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 970-71 (8th Cir. 2012) ("Further, the parties have not challenged the applicability of federal law to this issue, and they assume that federal law applies. Accordingly, the district court did not err in applying federal law to determine the enforceability of the forum selection clause, and we likewise apply federal law in reviewing the enforceability of the forum selection clause in this case.").

that he was "so closely related to the dispute between Synthes and [the sales representatives] that he should have reasonably foreseen that he would be bound these forum selection clauses." *Id*. at 611.

The *Synthes* court found several facts persuasive in reaching its conclusion that the forum selection clauses applied to the non-signatory third party. First, the COO worked closely with the sales representatives to develop Emerge while the sales representatives were still employed at Synthes. *Id*. at 610. Second, the COO had extensive knowledge of the sales representatives' non-competition agreements and worked to structure Emerge's initial business in a way that would avoid the appearance of a breach of those agreements. *Id*. at 610-11. Third, the COO and the sales representatives recognized the risk of legal action to enforce the non-competition agreements and warned prospective investors of said risk. *Id*. at 611.

Several other courts in factually analogous cases have found that forum selection clauses apply to non-signatory third parties. In *ELA Medical, Inc. v. Arrhythmia Management Associates, Inc.*, No. 06-3580, 2007 WL 892517 (D. Minn. Mar. 21, 2007), ELA Medical, Inc. ("ELA") and Deborah Whitney entered into a contract governing Whitney's employment as an ELA sales associate that contained a forum-selection clause and a non-competition provision. *Id.* at *1. Several years later, Whitney informed ELA that she was terminating the contract and entered a new contractual sales relationship with an ELA competitor, Biotronik, Inc. *Id.* ELA responded by filing an action against Whitney and Biotronik, generally alleging that Whitney breached ELA's contract and that Biotronik tortiously interfered with the contract. *Id.* On a motion to dismiss for lack of personal jurisdiction, the court found that Biotronik was bound by the forum selection clause in Whitney's contract. *Id.* at *6. It reasoned that "Biotronik, the non-party to the Contract, is not just the new employer of the individual who agreed to venue in

Minnesota and the exercise of personal jurisdiction over her by the Minnesota courts in the

Contract with her former employer. It appears that Biotronik actively sought the employ of

Whitney knowing that she was then employed by ELA under the Contract containing the clauses

at issue." *Id.* The court went on to note that the "defendants thus seem to share a common

interest in . . . facilitating the immediate employment of Whitney as a sales representative for

Biotronik unfettered by any restrictions in the Contract." *Id.* Further, it found that Biotronik had

acknowledged that it was clearly aware of the contract for some time, knew that ELA intended to

file suit to enforce the contract, and expressly sought a judicial declaration of its rights and

duties. *Id.* The court concluded that, "[h]aving sought such a declaration, Biotronik cannot now

claim that the resulting litigation it expected ELA to file for breach of that contract would not be

subject to its provision mandating a Minnesota forum." *Id.*; *see also St. Jude Med., S.C., Inc. v.

Biosense Webster, Inc.*, No.12-621, 2012 WL 1576141, at *5 (D. Minn. May 4, 2012) (new

employer of individual employee that breached an employment agreement with former employer

was bound by forum selection clause in employee's agreement because it was so closely related

to the dispute involving tortious contractual interference that it was foreseeable that it would be

bound).

     "[T]hese cases share the common thread that the close business relationships between the

signatories and non-signatories to the pertinent agreements, together with the fact that the dispute

among the parties centered on the interpretation of the agreements, provided a sufficient basis on

which to apply the forum selection clauses to the non-signatory." *Synthes, Inc.*, 887 F. Supp. at

610. The facts of this case follow the same pattern. First, while still employed at Radian, Bolen

interviewed with and emailed repeatedly with Richard Izen, Executive Vice President of Sales &

Marketing at Arch MI Services and Arch MI Holdings. *See* Higgins Decl. Exs. D, G & J, ECF

No. 45.  Bolen was among the very first candidates hired to lead the sales team at the newly formed Arch U.S. Mortgage Insurance,[4] pending the closing of the PMI acquisition.  *See* Higgins Decl. Ex. O.  Second, both Izen and David Gansberg, Chairman and CEO of Arch MI Services and Arch MI Holdings, knew of Bolen's non-competition agreement with Radian as early as August 16, 2013.  *See* Higgins Decl. Ex. F.  Nevertheless, on August 19, 2013, Izen offered Bolen a job with Arch MI Services.  *See* Higgins Decl. Ex. J.  A day later, Bolen submitted a completed job application in which she crossed out language certifying that she had "not signed any kind of restrictive covenant document creating any obligation to any former employer that would restrict my acceptance of employment with the Company."  *See* Higgins Decl. Ex. M. Despite this warning, Izen continued to pursue Bolen.  *See* Higgins Decl. Exs. O & Q.  On August 26, 2013, Bolen emailed Izen and an Arch human resources representative a copy of her Stock Grant Agreement with Radian Group.  *See* Higgins Decl. Ex. P.  That same day she signed an offer letter from Arch MI Services.  *See* Higgins Decl. Ex. R.  Third, Gansberg and his superiors recognized the risk of hiring a new employee with a non-competition agreement.  *See* Higgins Decl. Ex. F.  Despite this knowledge, the Arch Defendants' August 23, 2013 offer letter sought a representation from Bolen that she was "not a party to or bound by any employment agreement, noncompetition agreement or similar agreement with any other person or entity."  *See* Higgins Decl. Ex. O.  The Arch Defendants privilege log also suggests that the Arch Defendants consulted with an attorney regarding the non-competition provision in Bolen's Stock Grant Agreement.  *See* Higgins Decl. Ex. W.  Having sought to employ Bolen while knowing that she was employed by Radian under a contract with a non-competition agreement, Arch MI Services and Arch MI Holdings are sufficiently closely related to Bolen so as to foresee being bound by

---

[4] Arch MI Services and Arch MI Holdings do business in the United States under the name "Arch U.S. Mortgage Insurance" or "Arch U.S. MI."

the forum selection clause in the Stock Grant Agreement.

With respect to Arch Group and Arch Group US, however, Radian has not established a prima facie case of personal jurisdiction on the basis of the effects test. Radian has shown that Andrew Rippert, CEO of Global Mortgage Insurance and Reinsurance at Arch Group, as well as executives of other Arch-related entities, were aware of Bolen's non-competition agreement as early as August 16, 2013. *See* Higgins Decl. Ex. F. Additionally, on August 20, 2013, pursuant to the requirements of Arch Group's stock incentive plans, Constantine Iordanou, President and CEO of Arch Group, approved the equity award in Bolen's proposed compensation. *See* Higgins Decl. Ex. N. This is the extent of the evidence suggesting any business relationship between Bolen and these defendants. There is no evidence that Bolen ever met or communicated with executives from Arch Group or Arch Group US, and there is no evidence that Arch Group or Arch Group US had any detailed knowledge of the Stock Grant Agreement. Thus, neither Arch Group nor Arch Group US are so closely related to the contractual relationship or dispute that it is foreseeable that they would be bound by the forum selection clause in Bolen's Stock Grant Agreement with Radian. Thus, I have personal jurisdiction over Arch MI Services and Arch MI Holdings under the Stock Grant Agreement's forum selection clause, but I lack personal jurisdiction on this basis over Arch Group or Arch Group US.

### 3. Parent-Subsidiary Relationship

Given the lack of personal jurisdiction over Arch Group or Arch Group US on the basis of the *Calder* effects test or the forum selection clause, I will also analyze the exercise of personal jurisdiction over Arch Group and Arch Group US on the basis of their parent-subsidiary relationship with Arch MI Services and Arch MI Holdings.

"Generally, a foreign corporation is not subject to the jurisdiction of the forum state

17

merely because of its ownership of the shares of stock of a subsidiary doing business in the state." *Lucas v. Gulf & W. Indus., Inc.*, 666 F.2d 800, 805-06 (3d Cir. 1981); *see also Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336 (1925) (holding that where a foreign parent uses a subsidiary to conduct business in the forum state, the subsidiary does not necessarily subject the parent to jurisdiction when the corporate separation, though formal, is real).  However, "federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation . . . when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (finding that under the alter ego theory, a corporation's waiver of personal jurisdiction could be imputed to its successor or individual alter ego).

Under the alter ego theory of jurisdiction, a court may exercise personal jurisdiction over the parent based on the subsidiary's connection to the forum if the plaintiff can show that "the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent."  *Simeone ex rel. Estate Of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005) (citing *Arch v. Am. Tobacco Co.*, 984 F. Supp. 830, 837 (E.D. Pa.1997)).  As part of this inquiry, courts in this District often consider the following discrete factors: (1) ownership of all or most of the stock of the subsidiary; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance of business functions by the subsidiary which the principal corporation would normally conduct through its own agents or departments; (9) marketing by the subsidiary on behalf of the principal corporation, or as the

18

principal's exclusive distributor; and (10) receipt by the officers of the subsidiary corporation of instruction from the principal corporation.  *Simeone*, 360 F. Supp. 2d at 675 (citations omitted).

In the present case, Radian fails to make out a prima facie case that Arch MI Services and Arch MI Holdings are the alter egos of Arch Group and Arch Group US.  In support of the case for finding an alter ego relationship, Arch Group indirectly owns 100 percent of the voting securities of Arch MI Holdings.  *See* Higgins Decl. Ex. T at 5.  Additionally, the President and CEO of Arch Group approved the equity award contemplated as a part of Bolen's compensation offer.  *See* Higgins Decl. Ex. N (noting that awards of Arch Group stock as incentive-based compensation to non-executives require the approval of the Arch Group CEO, but "[t]hese procedures have not been created for purposes of authorizing hiring decisions.").  On the other hand, Radian has not presented any evidence that Arch Group and Arch Group US share officers or directors, employees, sales systems, or managerial personnel with Arch MI Services or Arch MI Holdings.  To the contrary, according to the company's Sales Directory, Executive Vice President Richard Izen leads a sales force exclusive to Arch U.S. MI.  *See* Higgins Decl. Ex. N. There is no evidence that Izen or Chairman and CEO David Gansberg hold any positions in the parent companies, and Izen and Gansberg independently hired and negotiated compensation with new employees at the new Arch U.S. MI.  *See* Higgins Decl. Exs. F (requesting "suggestions" but not approval from Arch Group executives on proposed hires and compensation packages) & DD.  Finally, Radian has not presented any evidence that Arch MI Services and Arch MI Holdings act as the marketing arm or exclusive distributor of Arch Group or Arch Group US or perform other business functions that a parent would normally perform through its own agents.  Thus, the evidence is insufficient to support even a prima facie case that subsidiaries Arch MI Services and Arch MI Holdings are "mere department[s]" of parents Arch Group and Arch

Group US.  For the preceding reasons, I lack personal jurisdiction over Arch Group and Arch

Group US, and I will dismiss the claims against these parties.

## IV.     MOTION TO TRANSFER

In the alternative, the Arch Defendants, joined by Bolen, move for a transfer of the case

to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides: "For

the convenience of parties and witnesses, in the interest of justice, a district court may transfer

any civil action to any other district or division where it might have been brought or to any

district or division to which all parties have consented."  28 U.S.C. § 1404(a).  In deciding

whether to transfer a case, a court must consider "the private and public interests protected by the

language of § 1404(a)."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

"[T]here is no definitive formula or list of the factors to consider . . . ." *Id.*   Private interests that

have been considered include:

> [P]laintiff's forum preference as manifested in the original choice; the defendant's
> preference; whether the claim arose elsewhere; the convenience of the parties as
> indicated by their relative physical and financial condition; the convenience of the
> witnesses-but only to the extent that the witnesses may actually be unavailable for
> trial in one of the fora; and the location of books and records (similarly limited to
> the extent that the files could not be produced in the alternative forum).

*Id.* (internal citations omitted). Public interests that have been considered include:

> [T]he enforceability of the judgment; practical considerations that could make the
> trial easy, expeditious, or inexpensive; the relative administrative difficulty in the
> two fora resulting from court congestion; the local interest in deciding local
> controversies at home; the public policies of the fora; and the familiarity of the
> trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (internal citations omitted).  The burden of establishing the need for transfer rests

with the movant, and "in ruling on defendants' motion the plaintiff's choice of venue should not

be lightly disturbed."  *Id*. at 879; *see also Shutte v. Armco Steel Corp*., 431 F.2d 22, 25 (3d Cir.

1970) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount

consideration in any determination of a transfer request . . . .").

  While the case could have been brought in the Eastern District of Texas, the Arch Defendants and Bolen have not established that the balance of public and private interests weighs in favor of the requested transfer.  The parties place significant emphasis on the relative weight of the forum selection clause while ignoring the clear language in the clause waiving any objection to the laying of venue in this court.  *See* Restricted Stock Unit Grant, Compl. Ex. B. at 7 (§8(f)) ("The Grantee irrevocably and unconditionally . . . (iii) waives any objection to the laying of venue of any such proceeding in any such court.") (referring to the United States District Court for the Eastern District of Pennsylvania or any court of general jurisdiction in Philadelphia County, Pennsylvania).  District courts applying Delaware law, the governing law of the Stock Grant Agreement, have remanded cases removed from state court when faced with similar language waiving objections to venue.  *See Carlyle Inv. Mgmt., L.L.C. v. Carlyle Capital Corp. Ltd.*, 800 F. Supp. 2d 639, 645 (D. Del. 2011) (concluding that defendants waived right to object to plaintiffs' choice of forum based on forum selection clause stating  that "each party hereto hereby irrevocably waives, to the fullest extent permitted by law, any objection that it may have, whether now or in the future, to the laying of venue in, or to the jurisdiction of, any and each of such courts"); *E.I. Du Pont De Nemours & Co. v. Quality Carriers, Inc.,* No. 10-534, 2011 WL 776211, at *3 (D. Del. Feb. 28, 2011) (finding that forum selection clause ("the Parties hereby reciprocally and irrevocably waive in advance any and all objections to the Delaware courts as forums . . . .") clearly indicated that the parties irrevocably waived the right to remove). Because I find that the Arch Defendants and Bolen are both bound by the forum selection clause, I find that they have waived their right to object to Radian's choice of venue and that the motion to transfer the case to the Eastern District of Texas should be denied.

Regardless of this waiver, the private interest factors in the § 1404(a) analysis weigh against granting the motion to transfer to the Eastern District of Texas. As explained above, Radian's choice of forum in this Court weighs heavily in favor of the case remaining here. With respect to the impact of the forum selection clause, in *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568 (2013), the Supreme Court found that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 582. While the forum selection clause at issue in *Atlantic Marine* was mandatory, the forum selection clause in this case is permissive. Restricted Stock Unit Grant, Compl. Ex. B. at 7 (§8(f)) ("any legal proceeding arising out of this paragraph *may* be brought in the United States District Court for the Eastern District of Pennsylvania") (emphasis added). Since *Atlantic Marine*, district courts have split on whether the private interest factors weigh entirely in favor of the preselected forum in the presence of a permissive forum selection clause. *Compare RELCO Locomotives, Inc. v. AllRail, Inc.*, No. 13-00394, 2014 WL 1047153, at *8 (S.D. Iowa Mar. 5, 2014) (conducting traditional forum non conveniens analysis in the context of a permissive forum selection clause) *with Compass Bank v. Palmer*, No. 13-831, 2014 WL 355986, at *5-6 (W.D. Tex. Jan. 30, 2014) (finding forum selection clauses permissive and following *Atlantic Marine*'s direction for enforcement for forum selection clauses within the § 1404(a) framework). Without deciding that question, I agree generally with the Supreme Court that the existence of a forum selection clause of any kind significantly undercuts any argument that the preselected forum is inconvenient for the parties or their witnesses. The Third Circuit previously made clear that "a forum selection clause is

treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara,* 55 F.3d at 880.  Therefore, while acknowledging that both the Arch Defendants and Bolen would prefer to litigate in the Eastern District of Texas, I find that the convenience of the parties and the witnesses is not a compelling factor in favor of transfer.  As for the remaining private interest factors, I recognize relevant records may be in the Eastern District of Texas where Bolen has worked for both Radian and the Arch Defendants; however, I am less inclined to give this factor significant weight in light of current technology.  Thus, the public interest favors weigh against the transfer of the case.

The public interest factors also weigh in favor of retaining this case in the Eastern District of Pennsylvania.  A judgment rendered in this Court is equally as enforceable as one rendered by the Eastern District of Texas.  Bolen claims that trying the case in this District would be "expensive, inefficient, and cumbersome . . . when virtually all of the witnesses are located in Texas."  Bolen Br. at 6.  In response, Radian argues that there are a number of Philadelphia-based Radian employees whose testimony may be critical to the case.  Transfer of this action to Texas is not justified when it would simply shift any expense associated with witness travel to Radian. *See Rogal v. Skilstaf*, 446 F. Supp. 2d 334, 335 (E.D. Pa. 2006) ("The purpose of § 1404(a) . . . [is] not to shift the inconvenience from one party to the other.").  The speed with which matters are resolved in each venue is of little significance to this case in which Radian seek expedited relief; accordingly, the relative administrative difficulty in the two venues does not warrant transfer to the Eastern District of Texas.  As for the local interest in deciding local controversies at home, this Court has a greater interest in deciding the case because it involves alleged injury sustained by a local Pennsylvania company.  Finally, in regard to the familiarity of the trial judge with applicable state law, the Stock Grant Agreement at the center of this case is

governed by Delaware law with which this Court is familiar.  *See* Restricted Stock Unit Grant, Compl. Ex. B. at 9 (§13).  The public interest factors do not warrant transfer to the Eastern District of Texas.  Thus, the motion to transfer this action will be denied.

## V.    CONCLUSION

In summary, I will deny the Arch Defendants' motion to dismiss the suit for failure to join an indispensible party.  On the personal jurisdiction issue, I will deny the motion to dismiss the claims asserted against Arch MI Services and Arch MI Holdings, and I will grant the motion to dismiss the claims asserted against Arch Group and Arch Group US.  I will deny the Arch Defendants' motion to transfer the suit to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a).  Finally, I will deny the Arch Defendants' request for costs and attorneys' fees.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to: